**A & E PRODUCTS GROUP, L.P., Plaintiff,**

v.

**MAINETTI USA INC., et al., Defendants.**

**No. 01 Civ. 10820(RPP).**

United States District Court, S.D. New York.

Jan. 27, 2004.

Amster, Rothstein & Ebenstein, New York, NY, By: Kenneth P. George, Ira E. Silfin, for Plaintiff.

Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olsen, Roseland, NJ, By: Francis C. Hand, Dennis Gleason, for Defendants.

Amster, Rothstein & Ebenstein, New York, NY, Attn: Kenneth P. George, Ira E. Silfin, for Plaintiff.

Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olsen, Roseland, NJ, Attn: Francis C. Hand, Dennis Gleason, Morrison, Cohen, Singer & Weinstein, LLP, New York, NY, Attn: Arthur J. Ciampi, for Defendants.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., Senior District Judge.

Defendants Mainetti USA Inc., Mainetti S.p.A. and Mainetti (HK) Ltd. (collectively, "Mainetti") move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure to obtain an order to declare the Zuckerman patents (U.S. Patent Nos. 5,383,583 (" '583 patent"), 5,485,943 (" '943 patent"), 5,613,629 (" '629 patent"), 5,819,995 (" '995 patent") and 6,145,713 (" '713 patent")) in suit inval-

id as being unpatentable over prior art. Plaintiff, A & E Products Group L.P. ("A & E"), cross moves for summary judgment on the issue of the effective filing date of the '713 patent.

## I. INVALIDITY DUE TO PRIOR ART

### A. *Invalidity of the '608 Patent*

In their motion papers, defendants made various arguments why the Zuckerman patents should be invalid based on prior art. Defendants' first point is that Claim 1 of U.S. Patent No. 5,199,608 ("'608 patent") is invalid in view of the Combinations Hanger. (Defs. Mem. of Law, dated April 14, 2003 ("Defs.Mem."), at 8.) This argument assumes that the Combinations Hanger is prior art for the '608 patent. In an Information Disclosure Statement in connection with the application for the '995 patent (Declaration of Ira E. Silfin, dated May 23, 2003 ("Silfin Decl."), Ex. 15 (Information Disclosure Statement, filed June 18, 1998)), Mr. Zuckerman submitted as prior art an affidavit dated November 19, 1993 of Theodor Riky (*id.*, Ex. 15 ("Riky Aff.")). At arguments held on December 15, 2003, defendants' attorney maintained that by submitting this affidavit Mr. Zuckerman had admitted (1) the accuracy of the descriptions of the Combinations Hanger in the Riky affidavit, and (2) that the Combinations Hanger was prior art to the '608 patent, which was applied for in 1990 and issued on April 6, 1993. Plaintiff denies that its filing the Riky affidavit constituted any such admission and states that, in its Information Disclosure Statement relating to the '995 patent application, it admitted the Combinations hanger was prior art for purposes of this application only, (*id.*, Ex. 15). Defendants have offered no law, rule, or regulation of the Patent and Trademark Office in support of its argument that plaintiff's filing that Information Disclosure Statement in 1998

renders the '608 patent invalid. Accordingly, genuine issues of material fact exist as to whether the Combinations Hanger is prior art to the '608 patent and the defendants' motion for summary judgment on this ground is rejected. *Key Pharms. v. Hercon Labs. Corp.*, 161 F.3d 709, 714 (Fed.Cir.1998); Fed.R.Civ.P. 56(e).

Defendants then argue that since Claims 2–13 of the '608 patent depend on Claim 1 of the '608 patent, Claims 2–13 are invalid as being anticipated by the Combinations Hanger for the same reasons as Claim 1. (Defs. Mem. at 9.) This argument is rejected for the same reasons defendants' first point was rejected: Defendants have offered insufficient support for their argument and genuine issues of material fact remain.

Thirdly, defendants argue that the Petrou patent (U.S. Patent No. 4,997,114 ("Petrou patent")) anticipated the structure added by Claim 13 of the '608 patent. (Defs. Mem. at 10) (*citing Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570 (Fed.Cir.1995) (holding that prosecution history will limit the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution).) Defendants have shown only that on October 21, 1997, during the application for the '995 patent (*see* Decl. of Francis C. Hand, dated April 24, 2003 ("Hand Decl."), Ex. 14), Claim 10 was rejected by the patent examiner as anticipated by Petrou and subsequently cancelled. (Defs. Mem. at 10.) Defendants point out that the applicant then amended Claim 10 into the form now appearing as Claim 1 of the '995 patent and argue "[h]ence, with the cancellation of the original Claim 10, the subject matter of the cancelled claim was dedicated to the public." (*Id.* at 11 (*citing KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351 (Fed.Cir.2000); *Lockwood v. American Airlines*, 107 F.3d 1565, 1574 (Fed.Cir.

1997)).) Defendants then describe how cancelled Claim 10 of the '995 patent, which was rejected by the patent examiner as anticipated by the Petrou patent, repeated the same structure as Claim 13 of the '608 patent issued on April 6, 1993. (*Id.* at 11.) Defendants conclude therefore that Claim 13 of the '608 patent must be held invalid. (*Id.* at 12.)

In *Kinetic Concepts*, the Federal Circuit did hold that "the prosecution history precluded KCJ from recapturing subject matter surrendered during prosecution" by application of the doctrine of equivalents. 223 F.3d at 1359. However, *Kinetic Concepts* is not applicable to Claim 13 of the '608 patent. At the time of the alleged dedication to the public of the rejected claims of the applicant for the '995 patent, Claim 13 of the '608 had been issued and thus the invention in Claim 13 was already dedicated to the public, albeit subject to plaintiff's patent rights. Nothing in *Kinetic Concepts* suggests that claims in patents already issued are dedicated to the public by subsequent prosecution history in other patent applications of the patentee.

Furthermore, *Lockwood* states, "[p]rosecution history estoppel precludes a patentee from obtaining in an infringement suit protection for subject matter which it relinquished during prosecution in order to obtain allowance of the claims." 107 F.3d at 1574. Since Claim 13 of the '608 patent had been allowed at the time of the prosecution history cited by defendants, plaintiff did not relinquish that claim in order to obtain its allowance. Accordingly, the decisions in *Lockwood* and *Kinetic Concepts* do nothing to invalidate Claim 13 of the '608 patent.[1]

### B. *Invalidity of the '583 Patent*

■ The defendants next argue that the '583 patent is invalid in view of prior art cited of record. (Defs. Mem. at 12.) The defendants state, "the Phillips patent, the Petrou patent and the Combinations Hanger, as correctly interpreted describe all the elements of the claims of the '583 patent" and that "these teachings would motivate one of ordinary skill in the art to arrive at the structured claim in each of the claims in the '583 patent." (*Id.* at 15.) Since this argument rests in part on the prior status of the Combinations Hanger and genuine issues of material fact exist as to whether the Combinations Hanger is entitled to prior art status, the defendants' argument for summary judgment is rejected.

Defendants further argue that the claims of the '583 patent are unpatentable pursuant to the provisions of 35 U.S.C. § 103, but set forth no argument that the claims are literal double patenting as opposed to obvious double patenting which plaintiff has cured by filing a terminal disclaimer. (*Id.*) Accordingly, the defendants have failed to present legal support for this argument.

Defendants then argue that the differences of the claims of the '583 patent over the cited prior art is taught by prior art not of record. (*Id.* at 15–19 (*citing* Hand

---

1. In addition, for this argument defendants rely on the Declaration of Arthur Jacob, citing, particularly, page 20, paragraph 17, as finding that "all the claims of the '608 patent are invalid on the basis of the disclosures in the Petrou and Phillips patents and the Combinations Hanger." (Defs. Mem. at 12 (*citing* Hand Decl., Ex. 15 (Decl. of Arthur Jacob dated January 22, 2003 ("Jacob Decl.")))).) A reading of paragraph 17, which appears on pages 15 and 16 (not page 20) of the Jacobs Declaration, does not support defendants' argument, nor does page 20 of the Jacobs Declaration support defendants' argument. (Jacob Decl. at 15–16, 20.) Both of defendants' cites to the Jacobs Declaration relate to claims of the '583 patent and not the claims of the '608 patent. (*Id.*) Accordingly, defendants' third ground for its motion for summary judgment is rejected.

Decl., Ex. 16 (*Korean Utility Model Registration 1989.0008703*); Hand Decl., Ex. 17 (*New Zealand Designs Registration 22832*); Hand Decl., Ex. 18 (U.S. Patent No. 4,009,805 ("Coon Patent")); Hand Decl., Ex. 19 (U.S. Patent No. 3,767,092 ("Garrison Patent"))).) Defendants argue, without any supporting affidavits or other evidence, that all the elements of this prior art not of record or that their teachings would motivate one of ordinary skill in the art to arrive at the structure claimed in each of the claims of the '583 patent. (Defs. Mem. at 19.) Accordingly, these arguments are rejected as nonsensical and because defendants have failed to show there is no genuine issue of material fact by setting forth the evidence supporting a summary judgment motion.

Defendants next argue that all the claims of the '943, '629, '995 and '713 patents were rejected by the patent examiner under the judicially created ground of non-statutory double patenting as being unpatentable over the claim of the '608 patent, and that since the claims of the '608 patent are invalid over the prior art as previously argued, the claims of the '943, '629, '995 and '713 patents are also invalid for the reasons previously argued. (Defs. Mem. at 19–21.) Since terminal disclaimers were filed by the plaintiff with respect to each of those patents, and the defendants have presented no evidence to support the claim that the '608 patent is invalid, this argument for summary judgment declaring the '943, '629, '995 and '713 patents invalid is rejected.

## II. STATUTORY INVALIDITY OF THE '713 PATENT

■ Defendants argue that the '713 patent does not show a cross reference in its related U.S. applications data section. (Defs. Mem. at 22.) In its reply papers, however, they disclose that the related U.S. application section of the '713 patent does list to the '995 patent. (Hand Supp. Decl., dated June 13, 2003 ("Hand Supp. Decl."), Ex. 6, at 1.) Additionally, the '713 patent cites as references the '608, '583,- '943, '629 and '995 patents. (*Id.*) Defendants also point out that on August 14, 2000, the applicant filed a petition to enter an amendment to add a cross reference to related U.S. applications, after having paid the issue fee pursuant to 37 C.F.R. 1.312(b), to establish a priority date of October 2, 1990. (Defs. Mem. at 22 (*citing* Hand Decl., Ex. 22)), and that the requested amendment was entered by the Patent and Trademark Office as directed to matters of form not affecting the scope of the invention on August 14, 2000. (*Id.* (*citing* Hand Decl., Ex. 23).) Defendants argue that plaintiff is not entitled to a priority date earlier than February 26, 1997 unless a corrected '713 patent is issued, and that since the '608 patent is prior art to the '713 patent, if a corrected '713 patent is not issued, the '713 patent is invalid under 35 U.S.C. § 102 and/or 35 U.S.C. § 103. *Id.*

Plaintiff cross moves for summary judgment on this issue arguing that it has satisfied the statutory requirements of 35 U.S.C. § 120 to claim the benefits of the earlier filing date of October 2, 1990 by filing the amended petition in a timely manner and that it should not be punished for the mistake of the Patent Office when issuing the patent. (Pl. Mem. of Law in Opp'n, dated May 23, 2003 ("Pl. Mem."), at 21–23.)

Section 120 of Title 35 is entitled "Benefit of earlier filing date in the United States." 35 U.S.C. § 120. It states in pertinent part that patent holder's subsequent application:

shall have the same effect, as to such invention, as though filed on the date of the prior application, if filed before the patenting or abandonment of or termination of proceedings on the first application . . . and if it contains or is amend-

ed to contain a specific reference to the earlier filed application. No application shall be entitled to the benefit of an earlier filed application under this section unless an amendment containing the specific reference to the earlier filed application is submitted at such time during the pendency of the application as required by the Director....

35 U.S.C. § 120.

The statute speaks in mandatory terms. As plaintiff has filed an amended petition to comply with those terms, and the Patent and Trademark Office has entered the amendment as directed to form not affecting the scope of the invention, plaintiff is entitled to the benefit of the earlier filing date. Defendants' motion is denied and plaintiff's cross motion is granted.

## III. INVALIDITY BASED ON DOUBLE PATENTING

Defendants' last argument is that the Zuckerman patents in suit are invalid for double patenting.

### A. Invalidity of the '583 Patent

■ In their moving papers, defendants argue that Claim 1 of the '583 patent is invalid for literal double patenting when read on Claim 13 of the '608 patent.[2] (Defs. Mem. at 24.) Both Claims 1 and 13 of the '608 patent read:

said opposing tab sides extending from said face member sufficiently such that

said foremost edges of said opposing tab sides *border* the near side of said second ridge, *without engaging said second ridge,* when said ribs cooperatively engage said first ridge; said second ridge being configured and dimensioned to obstruct access to said foremost edges of said opposing tab sides and thereby to essentially prevent both accidental and intentional manual removal of said tab from said tab holder.

(Hand Supp. Decl., Ex. 1 (emphasis added).)

Claim 1 of the '583 patent includes the identical language with the following variations: (a) it uses the words "at least border" in place of "border"; (b) it does not include the phrase, "without engaging said second ridge"; and (c) it uses the term "second ridge means" where the '608 patent uses the term "second ridge." (Hand Supp. Decl., Ex. 2.)

In its Markman opinion and order, the Court construed the word "border" as "extending along the edge."[3] *A&E Prods. Group. L.P. v. Mainetti USA,* 2002 WL 31844917, at *19, 2002 U.S. Dist. LEXIS 24280, at *57 (S.D.N.Y. Dec. 18, 2002). The words "border" and "at least border" do not have any meaningful distinction. Nor does the substitution of the language "second ridge means" in place of "second ridge" in the '608 patent's clause, "the second ridge being configured and dimensioned to obstruct access to said foremost

2. Defendants argue in their reply brief and subsequent letter that Claims 14, 16, 22, 23 and 24 are also invalid for double patenting (Defs. Reply Mem. at 13–14; Defs. Post Argument Letter, dated December 18, 2003 ("Defs.Letter"), at 1), defendants did not present such claims or arguments in their moving papers. Accordingly, these arguments are precluded as defendants failed to raise them in their motion papers. To allow such reply arguments to prevail would be unfair to plaintiff. Furthermore, the Court concludes that the defendants' arguments about those claims

are that these claims are obvious variations of, not that they literally infringe, plaintiff's earlier filed claims. Accordingly, since a terminal disclaimer was filed in connection with the issuance of the '583 patent, these arguments by the defendants based on double patenting invalidity fail.

3. The Markman Opinion did not address whether the term "border" included the engagement of an adjoining member. *A&E v. Mainetti,* 2002 WL 31844917, 2002 U.S. Dist. LEXIS 24280.

edges" (Hand Supp. Decl., Ex. 2), alter the literal meaning of the '608 patent.

As for the additional language in the '608 patent "without engaging said second ridge," the word "border" does not imply to the Court that the opposing sides would engage the second ridge. The Court has been unable to find any definition of "border" which implies that bordering connotes engaging an adjoining member, nor has any party provided the Court with any authority for such an interpretation.

As defendants point out, the application history shows that the applicant stated that when the applicant used the term "border," he did not intend to imply physical contact. (Defs. Reply Mem. of Law, dated June 13, 2003 ("Defs. Reply Mem."), at 12.) In his "Amendment After Final Rejection" filed Sept. 21, 1992, applicant requested approval for a proposed correction to Figure 3 to show the foremost edges of the tab sides 34 and 36, terminating just short of the adjacent side of the second ridge 28 and cited support for this correction in the original specification, stating:

> If applicant had meant to state that the foremost edges of tab sides 34, 36 actually contacted ridge 28, he would not have used the language "sufficiently close" and would not have had to specify that the closeness was sufficient to prevent the consumer from inserting a fingernail there between. When applicant meant for members to be in actual physical contact he used the term "engage" as at page 4, lines 33–34, where the engagement of the projecting members 24, 26 with the ridge 22 is described.

(Hand Supp. Decl., Ex. 19 (Amendment After Final Rejection, filed Sept. 21, 1992, at 5–6).)

Accordingly, the Court finds that (1) the addition of the phrase "without engaging said second ridge," while perhaps clarifying the meaning of "border," does not change the literal meaning of the term "border" as used by the applicant for the '608 patent; (2) the use of the term "second ridge means" does not change the literal meaning of the term "second ridge"; (3) the use of "at least border" does not change the literal meaning of the word "border"; and (4) Claim 1 of '583 patent does not constitute an obvious variation of what is claimed in the '608 patent. Accordingly, claim 1 of the '583 patent does literally claim the same invention as Claim 13 of the '608 patent and, therefore, is invalid. *In re Vogel,* 57 C.C.P.A. 920, 422 F.2d 438 (C.C.P.A.1970) ("A good test, and probably the only objective test for 'same invention' is whether one of the claims could be literally infringed without infringing the other.").

### B. *Invalidity of the '943 Patent*

■ Defendants next argue that Claim 13 of the '943 patent, which depends on Claim 11 of the '943 patent, literally infringes Claim 13 of the '608 patent because it requires that the tab holder have a second ridge and that the foremost edges of the tab sides "at least borders [*sic*] the near side of the second ridge." (Defs. Reply Mem. at 15.) Claim 13 of the '943 patent differs from Claim 13 of the '608 patent because it is dependent on Claim 11 of the '943 patent which requires that "at least one of said opposing tab sides having a rib for engaging said first ridge to lock said tab to said tab holder," whereas Claim 13 of the '608 patent is dependent on Claim 1 of the '608 patent which requires that both the "opposing tab sides [have] a rib . . . to lock said tab to said tab holder." (Hand Supp. Decl., Ex. 3; Hand Supp. Decl., Ex. 1.) Accordingly, there is no literal double patenting between Claim 13 of the '608 patent and Claim 13 of the '943 patent.

### C. *Invalidity of the '995 Patent*

Defense counsel's letter, dated December 18, 2003, also states that Claims 1 and 2 of the '995 patent are invalid for double patenting in view of Claim 3 of the '629 patent. (Defs. Letter at 1.) In defendants' moving memorandum, however, they rely entirely on the examiner's rejection of the original claims in the '995 patent under the judicially created doctrine of non-statutory double patenting over Claim 13 of the '608 patent and Claim 1 of the '629 patent—not Claim 3 of the '629 patent. (Defs. Mem. at 26.) The rejection by the examiner was not a finding of literal infringement of those prior claims. Since defendants make no further argument, the claim is denied for failure to present evidence of literal infringement. In their reply memorandum, defendants argue that Claim 1 of the '995 patent is identical to Claim 3 of the '629 patent. (Defs. Reply Mem. at 17.) This is a new claims argument made for the first time in reply papers and is denied as being untimely and an improper reply.

### D. *Invalidity of the '713 Patent*

Lastly, in their moving papers, defendants argue that Claim 1 of the '713 patent is "not directed to a separate and distinct invention from the invention claimed in the '608 patent or the '713 patent" and, thus, is invalid for same invention double patenting. (Defs. Mem. at 26.) In their reply memorandum, defendants argue only that Claims 1 and 2 of the '713 patent literally infringe Claims 1 and 2 of the '995 patent. (Defs. Reply Mem. at 18.) Defendants' reply arguments are rejected as untimely raised and improper. Defendants' arguments in its moving papers are rejected for failure to explicate its claims as to the '608 patent and as being nonsensical with respect to the '713 patent.

### CONCLUSION

Accordingly, defendants' motion to declare the Zuckerman patents invalid is denied in all respects, except that Claim 1 of the '583 patent is found to be invalid for literal double patenting, when read on Claim 13 of the '608 patent. Plaintiff's cross motion on the issue of the effective filing date of the '713 patent is granted.

IT IS SO ORDERED.